UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>PRIME MORTGAGE FINANCIAL, INC.<br><br>Debtor.<br><br>─────────────────────<br><br>DAVID M. NICKLESS, CHAPTER 7 TRUSTEE,<br><br>Plaintiff<br><br>v.<br><br>PRIME TITLE SERVICES, INC., ERIN MCSWEENEY, and PETER C. PAPPAS,<br><br>Defendants. | Chapter 7<br>Case No.08-40238-MSH<br><br><br><br><br><br><br>Adv. Pro. No. 09-4046 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

David M. Nickless, Chapter 7 Trustee of Prime Mortgage Financial, Inc. ("Prime Mortgage"), filed a three count complaint against Prime Title Services, Inc. ("Prime Title"), Erin McSweeney, and Peter Pappas—one count against each—seeking identical relief, namely, the turnover of the cash in certain bank accounts and for an accounting of any funds of Prime Mortgage in the possession of each defendant.[1] I have jurisdiction over this proceeding pursuant to 28 U.S.C .§ 157(b) and § 1334.

The parties submitted a joint pretrial memorandum stipulating to certain facts. At trial the parties introduced documentary evidence and Ms. McSweeney, Mr. Pappas, William Poutre, and

---

[1] Another defendant, the Massachusetts IOLTA Committee, had been dismissed as a party previously.

Lucas Miller testified. Based on the foregoing, I findings of fact pursuant to Fed. R. Bankr. P. 7052 and reach conclusions of law as follows:

### Findings of Fact

1. Prime Mortgage filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 29, 2008 (the "Petition Date").

2. Prime Title was organized in 2003 by William Poutre and Aris Pappas, the principal shareholders of Prime Mortgage, to perform title services and closings exclusively for mortgages and equity loans funded by Prime Mortgage.

3. Ms. McSweeney is an attorney licensed to practice law in the Commonwealth of Massachusetts.

4. Ms. McSweeney was an employee of Prime Mortgage at all times relevant hereto.

5. Between 2005 and the Petition Date, Ms. McSweeney conducted closings exclusively for Prime Mortgage.

6. Mr. Pappas is an attorney licensed to practice law in the Commonwealth of Massachusetts.

7. Mr. Pappas maintained an active law practice and between 2005 and the petition date conducted closings for Prime Mortgage as well as for unrelated lenders.

8. On the Petition Date, the Citizens Bank Business Partners III account entitled "Prime Title Services Conveyancing Account" had a balance of $4760.52. (Exhibit 1)

9. On the Petition Date, the Citizens Bank commercial account entitled "Prime Title Services Conveyancing IOLTA Account" had a balance of $10,093.45. (Exhibit 2)

10. On the Petition Date, the Citizens Bank commercial account entitled "Law Office of Erin L. McSweeney IOLTA Account" had a balance of $7455.02. (Exhibit 3)

11. On the Petition Date, the Citizens Bank Business Partners III account entitled "Law Office of Erin L. McSweeney" had balance of $3643.96. (Exhibit 4)

12. On the Petition Date, the Citizens Bank commercial account entitled "Peter C. Pappas Attorney-At-Law IOLTA Account" had a balance of $9362.57. (Exhibit 5)

13. Lucas Miller was employed by Prime Mortgage to work as a paralegal at Prime Title from 2004 to the Petition Date. In 2005 he was also employed as a compliance officer at Prime Mortgage.

14. The cash balances in the accounts referred to in paragraphs 8, 9, 10 and 12 above (the "Conveyancing Accounts") were derived from funds loaned by or on behalf of Prime Mortgage to borrowers in connection with home purchase or mortgage refinance transactions.

15. At each loan closing conducted by either Ms. McSweeney or Mr. Pappas, a detailed settlement statement was prepared which set forth how every dollar of loan proceeds and other proceeds paid in connection with the closing would be disbursed.

16. In connection with certain closings, small sums were not immediately disbursed but rather held in one of the Conveyancing Accounts pending some future triggering event. For example, money was held to pay the recording fees for discharges of mortgages paid off at the closing. Not uncommonly, the discharges were either recorded directly by the paid-off mortgagees or otherwise never sent to the closing attorney and thus the funds set aside in the Conveyancing Account for the discharge recording fees were never spent.

17. In connection with certain closings, the lender made it a condition of closing that the borrower use a portion of the loan proceeds to pay off certain unsecured creditors. Funds were allocated for that purpose and checks drawn on one of the Conveyancing Accounts

were given to the borrower with instructions to deliver them to the creditors. Occasionally, however, a borrower failed to deliver the checks to the creditors or a creditor failed to cash its check. This resulted in the funds represented by those checks remaining in the Conveyancing Account.

18. I find that at all relevant times all the balances in the Conveyancing Accounts represented borrowers' funds from loan closings that for reasons like those described above were never disbursed.

19. The funds in the account identified in paragraph 11 above represented fees received by Ms. McSweeney for legal services in connection with closings she conducted and thus at all relevant times belonged to her.

20. None of the funds in any of the accounts which are the subject matter of the Trustee's complaint were, as of the Petition Date or at any time prior thereto, property of Prime Mortgage or its bankruptcy estate.

## Conclusions of Law

To succeed in an action for turnover under Bankruptcy Code § 542, the Trustee must demonstrate that (i) the Defendants are in possession, custody, or control (ii) during the case (iii) of property that the Trustee may use, sell, or lease under §363 of the Bankruptcy Code, or that the debtor may exempt under § 522 of the Code. In re McDonnell, 2007 WL 1031300, *2 (Bankr. D. Mass. 2007). Because Prime Mortgage is not an individual and thus not entitled to exempt any property under § 522, the only issue is whether the Trustee could use, sell, or lease the funds in any of the accounts at issue under § 363. Section 363 expressly applies only to property of the estate. Based on the testimony at trial, I conclude that the defendants have presented a credible accounting of the funds in their respective accounts and the Trustee has

failed to carry his burden of proof that any of the funds in the accounts at issue are property of the estate under Bankruptcy Code § 541. In re U.S.A. Diversified Products, Inc., 193 B.R. 868, 872 (Bankr. N.D. Ind. 1995), aff'd. 196 B.R. 801 (N.D. Ind.), aff'd. 100 F.3d 53 (7th Cir. 1996). Therefore, the Trustee is not entitled to a turnover of the funds in any of the accounts.

A separate judgment shall enter.

Dated: October 20, 2010                                                By the Court,

                                                                       Melvin S. Hoffman
                                                                       U.S. Bankruptcy Judge